UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                    :
OCEAN GROVE CAMP MEETING          :
ASSOCIATION OF THE                         :
UNITED METHODIST CHURCH           :
                                                    :
         Plaintiff,                              :          Civil Action No. 07-3802 (JAP)
                                                    :
                 v.                                :          **OPINION**
                                                    :
J. FRANK VESPA-PAPALEO,              :
in his official capacity as Director      :
of the New Jersey Division on Civil    :
Rights, Office of the Attorney General :
of New Jersey,                                :
                                                    :
         Defendant.                           :
_____:

PISANO, District Judge.

    Presently before the Court is a motion by Defendant, J. Frank Vespa-Papaleo, Director of

the New Jersey Division on Civil Rights, to dismiss the Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Defendant seeks dismissal of this action based upon the abstention

principles set forth by the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.

Ct. 746, 27 L. Ed. 2d 669 (1971) and subsequent cases.  For the reasons below, the Court find

abstention under *Younger* to be appropriate.  Accordingly, Defendant's motion is granted and

Plaintiff's complaint is dismissed.

## I.  Background[1]

Plaintiff, the Ocean Grove Camp Meeting Association of the United Methodist Church (the "CMA"), is a Christian ministry that was formed in 1869 for the purpose of creating a permanent Christian camp meeting community on the New Jersey shore.  Compl. at ¶ 5.  The CMA owns all of the land in the seaside community of Ocean Grove, New Jersey, which consists of approximately one square mile.  *Id.* at ¶ 8.  Much of this land is leased to homeowners and businesses, but the CMA retains control over other portions of the land, which include the entire beachfront, the boardwalk, several parks and a number of facilities and structures.  *Id.*

At the center of the issue in this case is a wood-framed oceanside pavilion that is located on Ocean Grove's boardwalk on Ocean Avenue (the "Boardwalk Pavilion").  *Id.* at ¶ 10.  The Boardwalk Pavilion is used by the CMA for a variety of events, including, at times, worship services, bible school programs, gospel music programs and a summer band concert series.  *Id.* at ¶ 12.  When not hosting an event, the open-air pavilion is open to the public, who can sit, rest, and enjoy a respite from the sun or otherwise take shelter from the elements.  *Id.* at ¶ 14.  Also, although the parties appear to dispute the extent to which the Boardwalk Pavilion had been rented out for secular purposes, prior to the present dispute the Boardwalk Pavilion had been available for rental by the public for wedding ceremonies.  *Id.* at ¶ 15, 23.

In March of 2007, Harriet Bernstein and Luisa Paster, residents of Ocean Grove, applied to rent the Boardwalk Pavilion for their civil union ceremony.  *Id.* at ¶ 19.  The CMA denied the

---

[1]For the purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept Plaintiff's allegations, along with all reasonable inferences that may be drawn from them, as true.  *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001).  This statement of facts, therefore, is drawn from Plaintiff's complaint unless otherwise indicated.

application "because the requested use was inconsistent with the [CMA's] religious beliefs." *Id.* at ¶ 20. Ms. Burnstein then reached out to the President of the CMA and asked to have the matter brought before the CMA Board of Trustees for consideration. After efforts to resolve the issue with the CMA failed, *see id.* at ¶¶ 20-21, Ms. Burnstein and Ms. Paster filed a complaint with the New Jersey Division on Civil Rights ("DCR") alleging that the CMA illegally discriminated against them by denying their request to rent the Boardwalk Pavilion for their civil union ceremony. *Id.* at ¶¶ 24-25. Shortly thereafter, another Ocean Grove couple who had also requested use of the Boardwalk Pavilion for their civil union ceremony, Janice Moore and Emily Sonnessa, filed a similar complaint with the DCR based on the denial of their request. *Id.* at ¶¶ 29-30.

On August 13, 2007, Plaintiff filed the present action. Plaintiff asserts that Defendant, "[b]y accepting and investigating discrimination complaints against the Camp Meeting Association, specifically discrimination on the basis of civil union status based on the New Jersey Law Against Discrimination," has applied New Jersey law in violation of Plaintiff's First Amendment rights of free speech, freedom of expressive association and free exercise of religion. *Id.* at ¶¶ 36, 43, 48. Plaintiff also claims that its First Amendment rights have been violated because it fears that Defendant may require the CMA to permit civil unions to take place in the Boardwalk Pavilion. *Id.* ¶¶ 37, 44, 49. Plaintiff seeks declaratory and injunctive relief, as well as nominal damages.

On August 25, 2007, Plaintiffs, by way of an Order to Show Cause, filed a motion for a preliminary injunction seeking to enjoin Defendant from continuing its investigation regarding the two discrimination complaints. Two days later, Defendant filed the present motion to dismiss

3

the complaint.  The parties thereafter fully briefed both motions.  Oral argument for both motions was held on October 4, 2007, at which time the Court denied Plaintiff's motion for injunctive relief[2] and reserved decision on this motion to dismiss.  This decision follows.

## II.  Legal Discussion

Federal district courts have "discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding."  *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005).  Defendant asserts that the instant case presents just such a situation where abstention is warranted.  Specifically, Defendant argues that the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) and its progeny -- known as "*Younger* abstention" --  requires the Court to abstain from exercising jurisdiction in this case.  The *Younger* abstention doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982).  As the Third Circuit has noted, "*Younger* abstention arose primarily from 'the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the

_____

[2]On November 1, 2007, Plaintiff filed a Notice of Appeal of this Court's Order denying Plaintiff's motion for a preliminary injunction.  Ordinarily, the filing of an appeal divests a district court of jurisdiction over a matter.  However, "in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits."  *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982).  The Court, therefore, may decide Defendant's motion to dismiss, even though dismissal of Plaintiff's claims may moot the present appeal.

States and their institutions are left free to perform their separate functions in their separate

ways.'" *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195 (1992) (quoting

*Younger v. Harris*, 401 U.S. 37, 44, 91 S. Ct. 746, 27 L. Ed.2d 669 (1971)).

      In support of his motion, Defendant cites the Supreme Court case of *Ohio Civil Rights

Commission v. Dayton Christian Schools*, 477 U.S. 619 (1986), which, according to Defendant,

"plainly requires that this Court to abstain from adjudicating this case."  Def. Brf. At 1.  Indeed,

*Ohio Civil Rights Commission* is directly on point with the present situation.  In that case, the

plaintiff, a religious school, was accused of employment discrimination by one of its teachers.

The teacher, who had become pregnant, was advised during the school year that the school would

not renew her contract for the following year because of the school's "religious doctrine that

mothers should stay home with their preschool age children."  477 U.S. at 623.  When the teacher

consulted a lawyer and challenged the nonrenewal decision based on state and federal

discrimination laws, she was suspended and then terminated for her failure to abide by the

school's policy of "resolving disputes internally through the Biblical chain of command."  *Id.*

      The teacher filed a complaint with the Ohio Civil Rights Commission alleging that the

nonrenewal decision constituted unlawful sex discrimination.  Like the Plaintiff in the present

case, during the pendency of the state administrative proceedings, the religious school in *Ohio

Civil Rights Commission* brought an action in federal court seeking an injunction against the state

proceedings on the ground that the First Amendment prohibited the Civil Rights Commission

from exercising jurisdiction over it or sanctioning it for engaging in employment discrimination.

The federal district court exercised its jurisdiction over the case, but ultimately the Supreme

Court reversed, holding that the district court should have abstained from the case under

*Younger*.  *Id.* at 628-29.  The Supreme Court found that all of the requirements for *Younger* abstention were met and, notably, that "the Commission violate[d] no constitutional rights by merely investigating the circumstances of [the teacher's] discharge."  *Id.* at 628.

The Supreme Court has set forth a three-part test that this Court must apply in order to determine whether abstention is proper.  *Younger* abstention is appropriate when: (1) there is a pending state proceeding that is judicial in nature; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity in the state proceeding for the plaintiff to raise its constitutional challenges.  *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).  When all three of these factors are met, abstention is proper unless "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant immediate potential for irreparable harm to the federal interests asserted." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).  Plaintiff has not asserted the existence of -- and the Court does not find there to be -- bad faith, harassment or any other extraordinary circumstance that would preclude application of *Younger*.  Therefore, like the Court in *Ohio Civil Rights Commission*, this Court finds that the three enumerated factors have been satisfied, and abstention in this matter is appropriate.

1.  The Ongoing State Proceeding Is Judicial In Nature

The administrative proceeding underlying this litigation resulted from the filing of two complaints with the DCR.  Under New Jersey law, any person who has been the subject of illegal discrimination has the option of filing a complaint with the DCR or filing a complaint in state

Superior Court.  *See* N.J.S.A. 10:5-13.  The manner in which a party chooses to proceed is

exclusive; a party choosing to proceed before the DCR cannot file a complaint in the Superior

Court based upon the same grievance.  N.J.S.A. 10:5-27.  After the filing of a complaint with the

DCR, the agency undertakes "a prompt investigation" in order to determine if probable cause

exists to credit the allegations in the complaint.  N.J.S.A. 10:5-14.  Additionally, to the extent

feasible, the agency undertakes effort to resolve the matter through conciliation until 45 days

after a probable cause finding.  *Id.*  If the efforts at conciliation are not successful, an

administrative hearing is conducted.  N.J.S.A. 10:5-15, 10:5-16.  After the hearing, the Director

of the DCR will issue findings of fact and conclusions of law.  N.J.S.A. 10:5-17.  If the Director

finds that a respondent engaged in unlawful discrimination, the Director shall issue an

appropriate order "requiring such respondent to cease and desist from such . . . unlawful

discrimination and to take such affirmative action . . . as . . . will effectuate the purpose of the

[Law Against Discrimination]."  *Id.*  If no unlawful discrimination is found, the matter is

dismissed.  *Id.*  The parties are entitled to judicial review of the Director's decision, which they

can appeal directly to the Appellate Division of the Superior Court.  N.J.S.A. 10:5-21.

State administrative proceedings such as the one at issue have long been recognized as

being judicial in nature.  *E.g.*, *Ohio Civil Rights Comm'n.*, 477 U.S. at 627 (state civil rights

commission proceeding); *Middlesex County Ethics Committee*, 457 U.S. at 433-34 (attorney

disciplinary proceeding); *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002) (physician

disciplinary proceeding).  Nevertheless, Plaintiff argues that the proceeding is not "judicial in

nature" because the matter is presently under investigation by the DCR and a "probable cause"

finding has yet to be made.  It is on that basis that Plaintiff attempts to distinguish this matter

7

from *Ohio Civil Rights Commission*, in which the agency had made a finding of probable cause prior to the filing of the federal court action. Plaintiff's argument, however, ignores New Jersey's statutory scheme for addressing civil rights complaints, the adversarial nature of the complaints currently pending before the DCR, and the adjudicatory nature of the entire process that begins with the filing of a complaint.

The Supreme Court has noted that "a judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts under laws supposed already to exists." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983) (quoting *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 29 S. Ct. 67, 53 L.Ed. 150 (1908)). This is precisely the process, as set out by the relevant statutes and regulations, that is presently being undertaken by the DCR. Additionally, the DCR proceedings, even prior to a probable cause finding, have many characteristics of a typical adversarial judicial proceeding. As discussed earlier, the agency action is initiated by the filing of a verified complaint with the DCR. Upon receipt of a verified complaint, the DCR must promptly serve a copy on all respondents. N.J.A.C. 13:4-2.8. At its discretion, the DCR may also serve a "Document and Information Request" with a copy of the complaint. A respondent must file an answer and a response to the information request within 20 days after service. N.J.A.C. 13:4-3.1. In the answer, the respondent must state the nature of its defenses to each claim asserted, and must admit or deny each allegation in the complaint. N.J.A.C. 13:4-3.2. After the receipt of a verified complaint and answer, the DCR initiates an investigation into the allegations of discrimination. N.J.A.C. 13:4-4.1. This investigation appears to be akin to the discovery period in a litigation, with the typical discovery tools available to the DCR -- interrogatories, depositions, subpoenas,

etc., except that under the relevant rules, only the DCR "may seek discovery from the parties."

N.J.A.C. 13:4-4.2.  Throughout the process, motion practice is permitted and is governed by the

New Jersey Court Rules prior to transmittal of the matter to the Office of Administrative Law,

and is thereafter governed by New Jersey's Administrative Code.  N.J.A.C. 13:4-7.1.

There simply can be no question that the current proceedings before the DCR are judicial

in nature.  Consequently, the Court finds the first requirement for *Younger* abstention to be

satisfied.

2.  The State Proceeding Implicates Important State Interests

This second factor requires little discussion.  Defendant argues that "it is unquestionable

that New Jersey has an important interest in preventing discrimination in places of public

accommodation."  Def. Brf. at 14.  The Court agrees.  In *Ohio Civil Rights Commission*, the

Supreme Court expressly found that there was "no doubt" that the elimination of prohibited

discrimination was sufficiently important to satisfy the requirements for *Younger* abstention.

Plaintiff's argument that this second factor is not satisfied because New Jersey "has no

legitimate interest in investigating or otherwise applying the LAD against the Camp Meeting

Association" flies in the face of relevant Supreme Court precedent.  When evaluating *Younger's*

second prong, a court is to look to "the importance of the generic proceedings to the state," not to

the specific concern of the particular proceeding.  *New Orleans Public Serv., Inc. ("NOPSI") v.*

*Council of City of New Orleans*, 491 U.S. 350, 109 S. Ct. 2506, 105 L. Ed.2d 298 (1989)

("[W]hen we inquire into the substantiality of the State's interest in its proceedings we do not

look narrowly to its interest in the outcome of the particular case.").  By way of example, the

*NOPSI* Court explained that in *Ohio Civil Rights Commission*, the Court "looked not to Ohio's

9

specific concern with Dayton Christian Schools' firing of Linda Hoskinson, but to its more general interest in preventing employers from engaging in sex discrimination." *Id.*  Similarly, looking not at New Jersey's specific concern with the CMA's denial of the rental requests but rather at the State's more general interest in preventing illegal discrimination in places of public accommodation, the Court finds that the second requirement for *Younger* abstention has been met.

### 3.  Plaintiff Has an Adequate Opportunity to Raise its Constitutional Challenges

The last prong of the *Younger* analysis also requires little discussion.  To satisfy this third requirement for *Younger* abstention, it is sufficient that "the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." *O'Neill v. Philadelphia*, 32 F.3d 785, 792 (3d Cir.1994) (citing *Ohio Civil Rights Commission*, 477 U.S. at 629).  Pursuant to the relevant statute, "[a]ny person aggrieved by a final order of the director [of the DCR] may take an appeal therefrom to the Superior Court, Appellate Division as an appeal from a State administrative agency."  N.J.S.A. 10:5-21.  Moreover, it is clear that given the nature of the administrative proceedings before the DCR, Plaintiff will have the opportunity to raise its constitutional challenges there as well.  Plaintiff's argument that this third requirement is not met because Plaintiff will be unable to assert as broad a constitutional challenge in the state proceeding than it could in federal court is simply without merit.  Consequently, the Court finds the final requirement for *Younger* abstention is satisfied.

## III.  Conclusion

For the reasons stated above, the Court finds that abstention is warranted and required in this case.  First, there is a pending state proceeding that is judicial in nature.  Second, the state

proceeding implicates an important state interest.  Last, there is an adequate opportunity in the state proceeding for the Plaintiff to raise its constitutional challenges.  Accordingly, Defendant's motion is granted and Plaintiff's complaint is dismissed.

/s/ JOEL A. PISANO
United States District Judge

Dated: November 5, 2007

11